**In the Matter of ALLIED SUPERMARKETS, a Delaware corporation, and Great Scott Super Markets, Inc., a Michigan corporation, Debtors.**

**Bankruptcy Nos. 78–92871–W, 78–92872–W.**

United States Bankruptcy Court, E. D. Michigan, S. D.

Feb. 23, 1982.

David K. Page, Detroit, Mich., for Allied Supermarkets and Great Scott Super Markets, Inc.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

### FACTS

On May 29, 1981, the debtor, Allied Supermarkets, filed a Plan of Arrangement and it was confirmed on September 29, 1981. Under the Plan, creditors holding a Class Three Debt were entitled to elect to receive either a cash payment or a combination of cash and common stock of Allied. The Plan provided that such election was to be made on a form accompanying the proxy statement and the form was to be returned to the debtor prior to the confirmation of the Plan. Those creditors who did not complete the form and return it prior to the confirmation were deemed to have elected solely a cash payment.

An Order Approving Procedures for Soliciting Acceptances to the Plan was entered on July 27, 1981. That order provided that the registered holders of the Allied debentures as of July 24, 1981 would be entitled to vote on the Plan and that Allied would solicit such registered owners instead of the more numerous beneficial owners. Pursuant to the debenture order, Allied mailed a copy of the proxy statement to all the registered holders. The movant in this matter, Bear, Stearns, is a brokerage house and the registered owner of $360,000.00 worth of Allied debentures.

On September 18, 1981, Bear, Stearns exercised its right of election with respect to $100,000.00 face value of the debentures.

On behalf of the beneficial owner of these debentures, Bear, Stearns elected to receive cash and stock. No further election was received by Allied from Bear, Stearns prior to the confirmation date. On October 28, 1981, Bear, Stearns received notice from one of its representatives that a group of beneficial owners of the debentures had demanded that Bear, Stearns exercise the right of election in the form of cash and stock. Apparently, these individuals were not notified of their rights because Bear, Stearns failed to feed into a computer the names and addresses of these beneficial owners. Upon realizing its mistake, Bear, Stearns attempted to compromise with Allied requesting from Allied the right to file a tardy election and informing Allied that a refusal to allow the election would result in substantial damages to Bear, Stearns. When these negotiations failed, Bear, Stearns purchased the election rights of the beneficial holders of the debentures. Bear, Stearns claims that it will incur a loss of approximately $43,825.00 which represents the difference in the aggregate purchase price paid by Bear, Stearns to the beneficial owners and the aggregate price which the straight cash option would have brought under the Plan.

### LAW

The primary issue involved herein is whether the Court has retained jurisdiction under the Plan so as to hear the matter presently before it.

Section 368 of the Bankruptcy Act provides:

"The Court shall retain jurisdiction if so provided in the arrangement."

Article VI of the Plan provides for the retention of jurisdiction by the Bankruptcy Court. It reads:

"The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to the provisions of Section 368 of the Bankruptcy Act exclusively for the following limited purposes:

6.1 *Claims.* to allow and disallow claims not finally allowed or disallowed prior to

confirmation; and to disallow in whole or in part, any claim which, before confirmation, may have been provisionally allowed for voting purposes. The failure of Debtors to object to the voting of any claim shall not be deemed to be a waiver of Debtors' right to object to said claim, in whole or in part, thereafter. Debtors shall have 90 days after the Confirmation Date to object to the timely claim of any creditor. There shall be no time limit imposed upon Debtors to object to any claim not timely filed or deemed filed.

6.2 *Rejection of Executory Contracts.* To determine the rejection or cancellation of rejection of any executory contract under Sections 4.2 and 4.3 and the allowance of any claims resulting therefrom.

6.3 *Pending Controversies.* To determine any and all pending applications, adversary proceedings and litigated matters.

6.4 *Injunctions.* Upon the application of either Debtor, and upon proper notice and showing of good cause, to issue such orders and injunctions as may be necessary or desirable to effectuate the rehabilitation purposes of Chapter XI of the Bankruptcy Act.

6.5 *Classification of Creditors.* To determine any controversy relating to the classification of any creditor under Article I of this Arrangement or to the classification of any creditor, in whole or in part, as a secured or unsecured creditor.

6.6 *Allowance of Compensation.* To determine any and all applications for compensation for professional fees.

6.7 *Unliquidated Claims.* To exercise jurisdiction relating to timely filed claims which are unliquidated or contingent or both, even though proceedings by the holder of any such claim may have been instituted in any state or federal court; and to allow or disallow any such claim on its merits, at any time after confirmation. Upon the allowance of unsecured claims against Debtors they shall become Class Three Debts, and Debtors shall thereupon make payment and settlement thereof as provided in Article II.

6.8 Notwithstanding any of the foregoing, the Bankruptcy Court shall retain no jurisdiction over Continental Illinois National Bank and Trust Company of Chicago, the instruments, documents and agreements between it and either of Debtors and any collateral thereunder.

Bear, Stearns alleges that this Court has retained jurisdiction pursuant to 6.1 of the Plan because this action involves a "claim." The claim which Bear, Stearns argues has arisen is the right to file a tardy election, which it asserts is merely a procedural modification of the Plan not substantially affecting the rights of other creditors concerned with the Plan. The secondary issue, then, is whether this action concerns a claim within the meaning of 6.1 of the Plan. In several places the proxy statement advises, in substance, of the effect of failing to comply with the condition which requires the creditor to file an acceptance form prior to the confirmation date. This requirement is set forth precisely on the first page of Allied's proxy statement:

"Please note that the Plan provides that each creditor holding a Class Three Debt is entitled to elect to receive either a cash payment or a combination of cash and Common Stock of Allied, and such election must be made on the accompanying form. *Creditors who do not complete the election portion of the accompanying form and return it to the Debtors prior to confirmation of the Plan will be deemed to have elected to receive solely a cash payment in accordance with the Plan.* Each creditor should independently evaluate whether or not to make such election. The Debtors' Boards of Directors have taken no position in this regard."

From the foregoing, it is obvious that a creditor who did not complete the acceptance form and return it to the debtor prior to confirmation elected not to receive a combination of cash and stock.

In the instant case, Bear, Stearns failed to return the election form prior to the confirmation date. Indeed, the firm failed to return the election form at all. The failure by Bear, Stearns to comply with

the conditions governing the solicitation of acceptance, which was approved by the Court, resulted in the election by Bear, Stearns, in accordance with the Plan, to receive a cash distribution.

It is evident, therefore, that the present action does not concern a claim as to a tardy election since Bear, Stearns had previously made its election by failing to file it. This Court finds that this motion by Bear, Stearns is an attempt to modify the Plan by revoking its earlier election. Since this motion does not concern a claim but rather an attempted modification, this Court has no jurisdiction to grant the relief requested by Bear, Stearns since no such jurisdiction was retained by the Court under the Plan.

■ Even if this Court were to find it had jurisdiction, it would still not be inclined to grant the relief requested by Bear, Stearns.

Section 367(1) of the Act provides:

" . . . the arrangement and its provisions shall be binding upon the debtor, upon any person issuing securities or acquiring property under the arrangement and upon all creditors of the debtor, whether or not they are affected by the arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed and are allowable;"

9 *Collier on Bankruptcy* at ¶ 9.25(2), pages 337–38, states:

"The binding effect given by § 367(1) to a plan and its provisions means that those provisions are conclusively determined to create adjudicated rights and liabilities which are not subject to collateral attack. For example, if a plan proposes to pay creditors 40% of their respective debts in full settlement and satisfaction thereof, then upon confirmation of the plan it is *res judicata* that the claim of each creditor with respect to the plan is only 40% of what it originally was. The original claim against the debtor is completely discharged, unless it is a debt not affected by the discharge consequent upon confirmation. A creditor whose debt is discharged does not have a claim against the debtor for the difference between the amount of the original debt and the amount of the reduced debt under the plan. Even if the plan provides for deferred payments to the creditors, and the debtor fails to make those payments, the original debt is not thereby revived but creditors remain only with their rights under the plan. *The same general result is true of all other provisions of the plan."* (Emphasis added.)

The terms of the Plan are binding on Bear, Stearns. This Court is unpersuaded by the argument that § 367(1), given a strict interpretation by 9 Collier ¶ 9.25(2), is subject to the liberal interpretation which is allegedly supposed to be given to § 368. The cases cited by Bear, Stearns supporting a liberal interpretation of § 368 are based primarily on equity and the broad discretion which the Court retains to carry out, by equitable decree, the terms of the Plan of Arrangement. This Court finds that in the instant case, equity would not be served by allowing Bear, Stearns to modify the Plan by filing a tardy election.

This case concerns a brokerage house which received notice pursuant to the orders of the Court and Plan and which had made an election on behalf of the beneficial owner of $100,000.00 worth of debentures prior to the confirmation. Bear, Stearns' failure to elect on behalf of the beneficial owners of the debentures involved herein is a direct result of an error made by Bear, Stearns itself. The foregoing has been admitted by Bear, Stearns and it is the reason why Bear, Stearns has no cause against the computer company. Allied would be compelled to bear the burden of this mistake if this Court were to grant the relief requested by Bear, Stearns. Bear, Stearns has not demonstrated, to the satisfaction of this Court, that a tardy election would not harm the interests of Allied, the other debenture holders who timely elected or other holders of Allied stock. Other bondholders were required to elect prior to confirmation under the Plan with information available to them at that time. Other creditors were required to take a cash distribution because

of their failure to elect prior to confirmation. There is no compelling reason to treat Bear, Stearns differently.

Additionally, Bear, Stearns placed itself in its precarious position by settling with the beneficial owners for a price which was greater than the price they would have received under the Plan. Bear, Stearns has not offered a single argument which would allow this Court to rule that equity demands that a tardy election be permitted. Bear, Stearns' problems and losses in this matter were caused by none other than Bear, Stearns.

### CONCLUSION

This Court believes that since this matter does not involve a "claim" as contemplated by the Plan, but instead involves an action to modify a Plan of Arrangement, for which jurisdiction was not retained by this Court under the Plan or the Act, this Court does not have the authority to grant the relief requested by Bear, Stearns.

Assuming this Court had retained jurisdiction, the Court would find that the Plan was binding upon Bear, Stearns and would require compliance with its provisions thereby denying the relief sought by Bear, Stearns. Further, this Court would find that equity would not be served by allowing Bear, Stearns to prevail in this action since the problem involved herein is a direct result of a mistake made by Bear, Stearns itself, a mistake which this Court feels the burden of correcting same should not be placed upon Allied.

The motion is, therefore, DENIED.

So ordered.